UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | Case No. 3:15-cr-17 |
| v. | ) | |
| | ) | **SENTENCING BRIEF** |
| JAIME JACQUEZ-MORAN, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, in the Southern District of Iowa, by and through

the United States Attorney for the Southern District of Iowa and his Assistant United

States Attorney Clifford R. Cronk III presents this Sentencing Brief.

## I.   Background

In and about August of 2012, this case was generated by a DEA informant who is

believed to have met the defendant through Salvador and Guillermo Garcia. The

informant advised the DEA that the defendant was involved in a large-scale, Mexican

drug trafficking organization and had the ability to produce large amounts of drugs.

Traffickers from this group were using Guillermo Garcia's garage as a storage location

(stash house) for shipments of marijuana from Mexico. While in the garage of the

residence, Guillermo Garcia showed the informant the rear area of the garage where

they stored marijuana shipments which was stacked from the floor to the ceiling.   The

members of the drug trafficking organization, including the defendant and

Co-defendant Saenz, were bringing about 400 pounds of marijuana to West Liberty each

1

month from Mexico. The defendant and Saenz were looking for customers who wanted to purchase 50 to 100 pounds at a time in order to sell the marijuana quickly. At one point, Guillermo Garcia told the informant the guys were in Mexico putting together the next shipment.

During the course of the conspiracy, Garcia described an incident where an individual from Indiana traveled to West Liberty and obtained a load of marijuana. According to the informant, Garcia said this individual was stopped in Indiana and the marijuana was confiscated.

Defendant and Co-defendant Inocente Saenz told the informant about the seizure of 10,000 pounds of marijuana from the organization and referring to the drug organization of which the defendant was a member.

This and other evidence will support the drug quantity calculation and the other guideline calculations set forth in the Presentence Report.

## II.    Guideline Calculations and Contested Issues
### A. Drug Quantity

The PSR attributes 7,900 kilograms (rounded to the nearest hundred) of marijuana to this drug organization and the defendant specifically. This results in a Base Offense Level of 32.   The Government supports this calculation and intends to call witnesses to support the attribution of marijuana from the first half of 2012

until sometime in 2014. Based upon the defendant's statement that he and Saenz are members of an arm of the Juarez Drug cartel, this estimate is conservative.

### B. Maintaining a premises

Jacquez asserts that he should not be assessed the enhancement under §2D1.1(b)(12) because he claims he did not maintain any premises. The stash house enhancement "applies to a defendant who knowingly maintains a premises (*i.e.,* a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution." U.S.S.G. § 2D1.1(b)(12) cmt. n. 17; *United States v. Garcia*, 774 F.3d 472, 475 (8th Cir. 2014). *See also*, *United States v. Renteria-Saldana*, 755 F.3d 856, 859 (8th Cir. 2014) ("Although Renteria–Saldana did not own or reside at the . . . stash house, he exercised control over it and operated his drug-dealing business from the premises.). In *United States v. Miller*, 698 F.3d 699, 706 (8th Cir. 2012) the Court concluded that § 2D1.1(b)(12) applies when a defendant uses the premises for the purpose of substantial drug-trafficking activities . . . "

For this enhancement, the Court should focus on at least two locations: Garcia's garage and a separate facility controlled by the defendant. Both were used by the defendant to manufacture, store, breakdown, package, and distribute large amounts of marijuana. There is expected to be evidence that the defendant had the garage door opener for the Garcia's garage and did come and go as he pleased. Other evidence will show that surveillance officers observed the defendant at another

storage location and that the defendant had a key to access it. Other locations were also used by the defendant and other members of the conspiracy.

### C. Direct involvement in the importation of marijuana

The defendant and Saenz described their membership in the Juarez Drug Cartel which is responsible for importing marijuana.   The defendant touted his ability to obtain large amounts of marijuana directly from Mexico.   The evidence is expected to show that the large amount of marijuana displayed and the marijuana purchased from the defendant was Mexican marijuana and was packaged as such.

Importation of a controlled substance "is a continuous crime that is not complete until the controlled substance reaches its final destination point." *United States v. Rodriguez*, 666 F.3d 944, 946 (5th Cir. 2012) quoting *United States v. Gray,* 626 F.2d 494, 498 (5th Cir. 1980). "The scope of actions that 'involve' the importation of drugs is larger than the scope of those that constitute the actual importation. . . . '[I]involved' means 'included in the process of.'" *Rodriguez*, 666 F.3d at 946-47.

Here, the marijuana sold was imported from Mexico by the defendant and the drug trafficking organization to which he belonged.   Each shipment had to be acquired, imported, and brought to its ultimate destination, which, in this case was the Southern District of Iowa.

### D. Aggravating Role in the Offense

The PSR assesses a 4-level increase pursuant to § 3B1.1(a) because the defendant is an organizer and leader of criminal activity involving 5 or more

participants. The defendant claims he was on an equal level with Guillermo Garcia. The informant and Mr. Garcia have explained that the defendant was a supervisor of individuals involved in the conspiracy, directed others during the course of the conspiracy and controlled the product, set the price, and established the means of delivery and compensation for the marijuana. The defendant was higher in the organization than the Garcias.   The defendant contacted the informant and advised him of the amount of marijuana available and he set the price for the marijuana.

"The terms 'organizer' and 'leader' are to be broadly interpreted. Although an individual in a drug conspiracy must do more than sell drugs for resale in order to be deemed an organizer or leader, he need not directly control his co-conspirators." *United States v. Morris*, 791 F.3d 910, 914 (8th Cir. 2015) citing *United States v. Thompson,* 210 F.3d 855, 861 (8th Cir. 2000). "A manager or supervisor need only have managed or supervised one other participant" in criminal activity, and "the enhancement may apply even if the management activity was limited to a single transaction." *United States v. Adejumo,* 772 F.3d 513, 537-38 (8th Cir. 2014) citing *United States v. Zimmer,* 299 F.3d 710, 724 (8th Cir. 2002) (quotations omitted).

Section 3B1.1, note 4 of the guideline states:

> *In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.*

> *This adjustment does not apply to a defendant who merely suggests committing the offense.*

The Government will support either a three-level or four level upward adjustment for the defendant's aggravating role in the offense.

IV. **Analysis of Guidelines, Sentencing Factors, and Recommendation**

    **A. Guidelines**

A Base Offense Level of 32, plus two levels for maintaining a premises for the manufacture, distribution, and storage of drugs, two levels for importing the drugs from Mexico, and four levels for an aggravating role and a three-level reduction for acceptance of responsibility, yields a Total Offense Level of 37.   With a Criminal History Category of III this establishes an advisory guidelines range of 262 to 327 months.

    **B. The essential sentencing considerations**

Title 18, United States Code, Section 3553(a) provides that court with the essential considerations involved in sentencing.   It states that the court shall "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." *Id*. The portions of the statute relevant here include the directives that the court consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed — (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from

further crimes of the defendant. In addition, the court must consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6).

## C. Analysis and recommendation

Jaime Jacquez Moran is s citizen of Mexico illegally in the United States. During the course of the conspiracy he was deported and returned. He is 33 years old.   He was involved in a large-scale marijuana and cocaine trafficking organization and had an aggravating role in the activities of that organization, at least at the local level. Under these circumstances, considering the background and characteristics of the defendant, the need for just punishment, to promote respect for the law and to protect the public from future crimes, and to avoid unwarranted sentence disparities, the Court should impose a sentence of two hundred and sixty-two months in prison.

Respectfully Submitted,

Kevin E. VanderSchel
Acting United States Attorney

By:  /s/
Clifford R. Cronk III
Assistant United States Attorney
131 East Fourth Street, Suite 310
Davenport, Iowa   52801
Tel: (563) 449-5432
Fax: (563) 449-5433
Email: cliff.cronk@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2016, I electronically filed the foregoing with the Clerk of Court using the CM ECF system.   I hereby certify that a copy of this document was served on the parties or attorneys of record by:   ECF/Electronic filing.

UNITED STATES ATTORNEY

By: /s/_____

     Cliff Cronk